Good morning, Your Honors. I may have pleased the Court. Joseph Weisner on behalf of the Defendant Appellant. This case presents the issue as to whether or not my client's 1988 conviction in State court was properly used to determine that he was a career offender under the Federal sentencing guidelines. And as the record points out, Your Honors, the Mr. Ochoa had absconded and did not appear for sentencing. It was eventually – did appear for sentence in 1992. He thereafter was – he was placed – he was given a sentence of one year. And the reason that is operative is because, as the Court knows, the Federal sentencing guidelines contemplate a sentence of 13 months for purposes of determining the applicable time periods under 4A1. What happens with Mr. Ochoa, according to the records, is that he absconds, and then in 1998, he is picked up and he is given a sentence of four years. The problem with that, as we articulate in the brief, is that the record is unclear as to whether or not the four-year sentence that was imposed in 1998 was as a result of the underlying 1988 conviction. Because as the – as paragraph 33 of the pre-sentence report, which is reproduced in the comments – excerpts of records under seal suggest, or actually states, is that Mr. Ochoa had absconded with his family, he had committed other offenses while on probation, and was given this four-year sentence. It's unclear from the probation report or, frankly, from any documents, because as the Court, as we suggest in the brief, and I think the facts bear out, the 1988 records are – they were purged. They're not available. So it's unclear in 1998 if he was sentenced to more than a year for the underlying 1988 conviction, or did the trial court in the State court  for the underlying 1988 conviction, and another three years for these other misdemeanors that he had committed. So the – so the record is just – is rather unclear as to – as to what happened. And based upon that, it is – it is the appellant's view that it would be – it was improper, rather, for the district court to use the 1988 conviction and the subsequent 1988 sentence of four years to render a career offender determination in this particular case. The government relies on – on Latimer and a case out of the Fourth Circuit, Romary. The point about Latimer is that I think the language the government points to is, in fact, a different dicta as a – as a court. The issue on Latimer was really whether community confinement qualified as a term of imprisonment for the career offender application, and this Court said that it did not. I'm mindful that Judge Tshishima would comment. Counsel, where is the record ambiguous as to what he was sentenced on in 1998? Well, Your Honor, if – if one looks at page – or it would be page 30 of the statute – excuse me, page 10, beginning on page 9, accurately, of the pre-sentence report, it talks about the 19 – and this is paragraph 33. What paragraph is that? That's paragraph 33, Your Honor, on page 9 of the PSR, which is, again, is reprinted in the sealed excerpt. What's ambiguous about that? Well, what's ambiguous about it is that he's given three years of probation and one year in – in jail. Then, as the – as it's noted there, he – in 1998, probation's revoked and he's given four years. But if you look at that and compare it to the – to the following paragraph, beginning at the top of page 10, the probation officer says, while on probation for this offense, Mr. Ochoa committed misdemeanor violations and absconded with his wife. He left the jurisdiction without prior approval, a bench warrant was issued, and his – he was returned. His probation was thereafter revoked and he was sentenced to four years' custody. Well, she alludes to the fact that he committed other misdemeanor violations while on probation, but it's unclear whether or not that four years was for the underlying case in 1988 or the continuing course of conduct that this defendant engaged in that – that rendered the four-year sentence. So if it is – if we – if the district court was unable to determine – Now, counsel, I don't see any other record of a conviction on the misdemeanor. Wouldn't that be in here? There – there – it would be in there. The – It would be someplace between paragraph 40 and paragraph 41 if we were going in – in chronological order, right? So it's been omitted from the PSR. Apparently it's been omitted, and I want to correct one thing if I misspoke. The 1998 conviction was – appears to have been for a felony. The – the late – what the probation officer alludes to in the paragraph beginning on the top of page 10 are other misdemeanor convictions. They may not have been counted. They may not have been scored because of their age. I'm not sure why the probation officer did not include those in the PSR. But nevertheless – I don't know why we have to read ambiguity in here. It very plainly says on page 9 in the report that he got – that he got probation, his probation was revoked, and he got 4 years in prison on this particular count, the assault with a firearm. Nobody's – nobody's blended anything together in this report. I mean, we really have – we're really having to read a lot into this to find confusion where there doesn't appear to be any. Well, the – the curious thing about giving him 4 years of – if Your Honor is correct in the analysis, the curious thing is that the underlying sentence he received in 1988 was only 1 year, and he was placed on, I believe, according to the record there, 3 years probation. 3 years probation. Right. Yet in 1998, when he's sentenced, when he finally appears before the court, he gets 4 years. So my reading of it is that there is some uncertainty as to what actually happened in 1998. And if he – if it's unclear that he received more than 12 months for the underlying case – Just a minute. What do you mean uncertainty as to what happened? You said there is uncertainty as to what happened in 1998. In 1998. What is the uncertainty? Well, the uncertainty, as I – as I argued, is that we don't know what the 4 years was for. It was – he was probationary revoked for – Well, it was for violation of probation, right? Well, it was a violation of – it appears that it was a violation of probation. But what the probation officer alludes to again on the top of page 10 is that this gentleman committed other misdemeanors while – Right. That would be – that would be a good reason for revoking his probation. Right. But it doesn't say anything about whether he was convicted on the misdemeanors, whether he was sentenced on those misdemeanors. And this is a report, paragraph 33, is a report on the 1988 assault. I don't know any place – I don't think I've ever seen a PSR that blended things together in the way that you're suggesting they got blended here. Everything else has been set out in separate paragraphs. So I – you've read a lot of But I don't think there's any confusion here. I understand, Your Honor. And I think – I think – I appreciate the Court's comment on that. But again, I just – for the sake of repeating myself. Well, just a minute. You agree it's not uncommon when a probation violation amounts to a misdemeanor that lots of times it's just simpler and the DA just, you know, charges a probation violation instead of a separate misdemeanor, right? That's correct. And they never – they never prosecute the misdemeanor separately. That is correct. That is – That's probably what I – I mean, as far as – isn't that the sensible way to read this record? I think that's a sensible way of reading the record. I think one could take that position, but I – but my view is that because it is unclear as to exactly what happened, he should not get the criminal – the criminal – or, excuse me. Why is it unclear? It says probation revoked four years' prison. Why is that unclear? Well, again, it just goes back to the point of was there anything else that was underlined that justified – that the Court relied upon to give us a clear – But suppose there was also a misdemeanor violation. It still led to the revocation of probation, right? That's true. But even if it were under the statute, under the guidelines, the – the revocation, the revocation that can be counted has to result in a prison term of – of 13 months or more. So the point is, is that – as I've tried to articulate, is that because it's – in my view, it's uncertain what he got as a result of the four years. We don't know if the four years was total to the underlying 1988 case or it had to do with any other charges or misdemeanor charges that he occurred – or incurred while he was absconding. That is my view. The second –  Yes. I'm not sure if that was clear. You got four years on probation. Okay? Do you have an argument? Well, if he's on four years of probation, Your Honor, I – my view would be – would be that you have to look at 4A12K2, which seems to suggest that you – the way the guidelines are structured, if you look at 4K, that talks about the effect of the time period, what is used to affect the effect of the time period, and what is used to affect the time period. The government relies on K1 to suggest that that's the answer, but the – K1 talks about the – what you use to determine the criminal history score. K2 says revocation of probation, et cetera, may affect the time period under 4A1. And my reading of that is that K2 does not apply because you have to look at C. In any other case, the time period is not used to affect the date of the original sentence, and the original sentence was back in 1988. I don't read K2 to shoestring this case into the 1988 original charge plus the 98 violation. Well, yeah, but we have a – well, you have a – well, why isn't it 2A? You have an adult term of imprisonment totaling more than a year and a month, and you count from the date of the last release from incarceration of such sentence, and this refers to K1. Well, if – the premise that Your Honor's point that it's clear as to what happened with the violation, I would concede that in fact it would apply in this particular case under 2. But again, I go back to the point that it is not clear. Your argument about K2C depends on us finding ambiguity in paragraph 33. Exactly. If we don't think that there's ambiguity, then you're going to lose under K2A. I think you're correct. Now, the last point I want to make just briefly, Your Honor, is that I believe that the district court was erred in relying upon the assertion in the probation report that the underlying 1988 conviction was a crime of violence. There is no citation to the actual underlying State charge, and the probation officer merely describes the offense in the PSR, again, beginning on page 2. Counsel, excuse me. When you finish that, I just have a question, and I want to pursue that line with you. But you finish what you were going to say. Oh, very well. So my point was going to be that that is unclear based upon what the probation officer described as the 1988 case, that conviction, whether or not it qualified as a crime of violence for purposes of the career offender statute. I think as we point out in the brief, the Court simply can't – has to rely upon something specific as to what the underlying case was, and I don't believe that it was done in this particular matter. And prejudice results, if I could just briefly say, Your Honor, because if you take out the 1988 conviction, he's looking at a 235-month sentence as opposed to what he got, which I believe was 282, so we're talking about a 50-month difference. And I think I'm out of time, so that's it. Chief, may I just want to inquire, if under Trigueros v. Adams, that 658 – I'm sorry, Your Honor? Trigueros v. Adams. It's a Ninth Circuit case, 2011. I have the citation 658-983, F3rd 983. If we can take judicial notice of records in other courts, outside the Federal system, have you checked the State court record under which your client was sentenced to the – Your Honor, we attempted to acquire those records, and as the – as the Probation Office indicated, and we say in the brief, those records do not exist. They were purged. They were destroyed. So – Well, McGarrett Ochoa was, in fact, convicted of a 245A2 offense, right? That's correct. And he was not convicted of a misdemeanor. He was placed on a felony probation as a result of that conviction. His sentence was suspended, and his condition to probation included one year in a county jail. Now, if that is a – is that categorically a crime of violence under State law? Well, Your Honor, I don't want to concede that it was a 245 because it was – it's unclear, again, from the probation report. I haven't seen the record, so I can't confirm that it was a 245. I don't think anybody can. But the description, as a probation officer lays out, one could argue qualifies as a crime of violence. But without the records and without anything more than the probation officer included, I think it was an error for the district court to rely upon that to determine it was a crime of violence, in spite of the fact that, unfortunately, defense counsel conceded that. But I think that's plain error. Thank you, Your Honor. That's your position? Okay. Thank you. Good morning, Your Honors. My name is Jason Pitt. I'm on behalf of the United States. I want to briefly respond to the arguments of counsel, beginning with the issue about whether the record of the PSR is unclear about whether this four-year prison term imposed on the assault with a deadly weapon is somehow muddied. If the court looks at paragraphs 37, 38, 39, and 40 of the PSR, the misdemeanors referred to in paragraph 33 and focused on by counsel are articulated, and the sentences imposed on those misdemeanors during the time period of 1992 to 1995, when Mr. McGeochow was a fugitive, all reveal misdemeanors, various misdemeanors occurred during that time period, and none of them have a sentence of four years. Indeed, paragraph 37 has false ID to a peace officer. There's a three-day jail term imposed. Paragraph 38, DUI, 13 days jail, and later, 30 days jail. Paragraph 39, false ID to a peace officer, again, 30 days jail. In paragraph 40, another false ID to peace officer, three years probation, five days jail. There is no uncertainty. And you got 30 days in jail on 39 for having pneumatic tires not in regulation? What does that mean? That was one of the underlying charges, but the description of paragraph 39 does indicate it was because he gave a false name, and I'm not sure what pneumatic tires not in regulation is, your honor. You guys are pretty tough in Santa Clara County. It does appear that Mr. McGeochow had a rough run in Santa Clara County. Another important point I wanted to mention about whether the PSR has any problems, the defense counsel has mentioned that records were purged. What's important to note is paragraph 33 at the top of page 10, the second paragraph. The Santa Clara County Superior Court records relied upon by the PSR, identified in paragraph 31, are the basis for the PSR, as well as a report from CDC. The only thing purged is identified as arrest reports from the San Jose Police Department regarding the assault with a deadly weapon. So if you take paragraph 31, which provides the introduction of the basis for the PSR, the sentences, the following represents defendant's criminal history, and documents obtained from Santa Clara Superior Court, San Diego County Superior Court, CDC, and San Jose Police Department. Paragraph 33 then makes clear to the court that the arrest reports, which would not be reliable under Shepard anyway, those are what were purged, not the Superior Court documents. And those documents are what provide the reliable basis here in this case to find that the prior assault with a deadly weapon was in fact a crime of violence and did properly qualify Mr. McGeochow for career offender status. I'm sorry, go through it again. Those documents are what documents? The Santa Clara County Superior Court records, which are referenced as the basis for the probation officer's analysis of criminal history. Reference where? Paragraph 31. You just meant paragraph 31? Yes, your honor. Let me find it, 4, paragraph 31. The following, all right, but it doesn't, the fact that it doesn't state in 33 what penal code section it is, does that mean the record doesn't contain that? No, your honor, the fact that it doesn't cite the statute, I don't think, is dispositive of whether these came from the Santa Clara County Superior Court. To the contrary, the only thing purged was San Jose Police Department records. It's also worth noting in this particular case where the review is for plain error, the court must find an error so obvious that a competent judge should be able to avoid it without any party bringing the matter to the judge's attention. And in weighing that in this particular case, the court should consider that at the district court level, the defendant's sentencing brief before the district court, which is found, the specific page I'm referring to is excerpts of records, page 19, conceded that it was an assault with a firearm and mimicked or brought in the same description provided in PSR paragraph 31. That is that the defendant shot into a crowd and two individuals were injured. In addition, during the sentencing hearing at excerpts of records page 50, the defendant conceded that his prior conviction was properly scored, that it was a crime of violence, but the defendant had a different argument for the district court, that is that he should be given a lesser sentence under 3553. The last line of paragraph 33 of the PSR. Yes, Your Honor. Where the last sentence says, the charging document reflects. That would be the information or the indictment, right? Yes, Your Honor, that's my reading of it. Do you infer from that that the probation officer had access to the charging document? Well, I infer from that sentence as well as the one I identified, paragraph 31, which indicates documents obtained from Santa Clara County Superior Court. Okay. Unless the court has other specific questions, I'm prepared to submit the matter. I don't think there are further questions. Thank you. Thank you, Your Honor. Counsel, I'll give you one minute. Well, Your Honor, on the actual underlying documents, as this Court knows, in the Ongle case, 230, excuse me, 323, Fed 3rd, 1172, 2003 case, this Court has said that the district courts may not rely exclusively on the charging documents or the pre-sentence report as evidence of a prior. And as Judge Toshima suggested or alluded to, it appears that that's what the district court relied upon was unclear. There was really nothing that the court should have or that could have relied upon that was presented to it through the probation officer and the PSR. And so I think that's a real problem here. And the government seems to suggest, well, it wouldn't really have made a difference because Judge Englund was pretty clear about how upset he was with this defendant's priors and therefore sentences him to 282 months. And the government seems to suggest that even had the career offender section not applied, he would have gotten the same sentence. I think that's speculation, and I think that this case deserves to be remanded to the district court to determine if, in fact, he would apply the same sentence with the career offender calculation removed. Okay. Thank you, counsel. We thank both counsel for the argument. Murgy Ochoa is submitted.
judges: Stafford, Tashima, Bybee